

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 1 4 2003

**CLERK, U.S. DISTRICT COURT**
By _____
          Deputy

JAMES HUMPHRIES, On Behalf of §
Himself and All Others Similarly Situated §
  §
VS. §
  §
  §
STREAM INTERNATIONAL, INC., A §
FOREIGN BUSINESS CORPORATION, §
AND SOLECTRON TEXAS, INC. §
a/k/a SOLECTRON CORPORATION, §
A FOREIGN BUSINESS CORPORATION §

CIVIL ACTION NO: 3:03CV1682D

---

## PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR NOTICE TO POTENTIAL PLAINTIFFS AND LIMITED EXPEDITED DISCOVERY

---

Plaintiff James Humphries, (hereafter "Humphries" or "Plaintiff") individually and on behalf of other similarly situated current and past employees of Defendants Stream International, Inc. and/or Solectron (hereafter "Defendants"), files this Reply to Defendants' Response to Plaintiff's Motion For Notice to Potential Plaintiffs and Limited Expedited Discovery, and would show the Court as follows:

## I. INTRODUCTION

This reply will address three major issues. First, Plaintiff is "similarly situated" to the proposed class because he had similar job duties, pay structure, and overtime problems as the proposed class. Second, several concerns addressed in Defendants' Response are not relevant to the limited issue before the Court. The fact that the

proposed class is nationwide does not alter the legal questions before the court or

heighten the burden of Plaintiff to show he is similarly situated to the proposed class.

Nor does the existence of possible exemptions change the burden of Plaintiff to show

he is similarly situated to the proposed class in job duties, pay structure, and overtime

problems.  Third, Plaintiff's notice form is both fair and reasonable.

## II.  <u>FACTUAL BACKGROUND</u>

Defendants assert that Plaintiff relies solely on "cursory form declarations" to

prove that James Humphries is "similarly situated" to other Class Members.

Defendants also assert that Plaintiff fails to specify the job duties of any trainer.  Neither

assertion is accurate.  In his initial motion, Plaintiff provided four pages of detail job

instructions for trainers. (*See* Exh. I in Plaintiff's Initial Motion). These descriptions are

indicative of the primary tasks performed by all trainers regardless of location. (*See*

Second Decls. of Humphries, Hatcher, Power, and Campos Exhs. A-D).  In addition, a

list of Trainer Responsibilities and Requirements is located on Steam's website and

was provided in Humphries' initial motion. (*See* Exh. H in Plaintiff's Initial Motion).

These descriptions reflect the job duties of all trainers.  These two documents list over

sixty tasks, specifying in detail the job duties of a trainer.

Plaintiff also provided sworn declarations by a trainer and training manager

swearing that the job of a trainer is similar to the job of all other trainers regardless of

site. (*See* Initial Decls. of Humphries and Hatcher, Exhs. A and E; *See also* Initial

Decls. of Kessler, Fenstermacher, Cone, Campos and Power, Exhs B, C, D, F and G).

Defendants' only response, regarding the similarity of these trainers, is an unsworn

declaration of Richard Pitrolo who stated that "each site established its own policies and own employee handbook which they had the discretion to revise." (*See* Defedents' Exh. A).  Even if this is true, it is not very useful.  Pitrolo's statement does not indicate if individual sites actually exercise this discretion, if this discretion to make changes was without limit, or if this discretion resulted in any meaningful differences in the job duties performed by trainers.  What we do know is that Defendants standardized the job duties and responsibilities of trainers because it contributed to efficient operations from site to site. (*See* Second Decls. of Humphries, Hatcher, Power and Campos, Exhs. A-D ¶ 4).  Defendants' clients demanded uniform procedures for trainers. (*See* Exhs A-D ¶ 4).  Since Steam's clients were serviced by numerous call sites, the trainers in those sites had to follow the same procedures. (*See* Exhs A-D ¶ 4).  Job duties were further standardized when Defendants had all of their training managers discuss the appropriate duties for trainers and create a list of "instructor duties" for all trainers to follow. (*See* Exhs A-D ¶ 4).

This is not to say there were no differences amoung sites.  There were; but the differences were not related to job duties but to differences in facilities. (*See* Exhs A-D ¶ 9).  For instance, a trainer in one location had to vacuum where another had to sweep; nonetheless, each trainer had the job duty of cleaning up after a class was completed. (*See* Exhs A-D ¶ 9).  Similarly, a trainer in one location may be teaching slightly different curricula based on a particular customer's need, but the process of training call agents was the same. (*See* Exhs A-D ¶ 9).  In fact, Defendants ensured that the process was similar in each site by requiring each site to report to a field

training manager who would oversee all the sites.  The field managers acted to ensure uniform policies and procedures.  (*See* Exhs A-D ¶ 4).

All trainers had the same pay structure.  All trainers had similar job duties.  Plaintiff detailed over sixty job specific duties and established that these were similar for all trainers.  Finally, each trainer was similarly affected by Defendants' work policies; such policies ensured trainers would work over forty hours a week and not be appropriately compensated for overtime worked.

### III. ARGUMENT

A.   Legal Standard:  The Standard for "similarly situated" permits the District Court to authorize Notice to Potential Opt-in Plaintiffs.

Under Section 216(b) an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."   *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995).   Plaintiff and Defendants disagree on the standard for "similarly situated."  Defendants allege that the standard for "similarly situated" articulated by Plaintiff in page 3 of the Plaintiff's brief is not correct.

Plaintiff asserted that a plaintiff must show 'a reasonable basis' for the allegation that a class of similarly situated persons may exist.  *See* Plaintiff's Brief Page 3.  It is well-established that "the plaintiffs bear the burden of demonstrating 'reasonable basis' for their claim of class-wide discrimination."  *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.), *cert denied,* 117 S.Ct. 435 (1996); *Haynes v. Singer Co, Inc.,* 696 F.2d 884, 887 (11th Cir. 1983); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 361 (M.D. Ala. 1999).  Defendants inaccurately cite *Garner v. G.D Seale Pharm & Co.* as authority

that there is a greater standard than that articulated by Plaintiff. 802 F.Supp. 418, 422-23 (M.D. Ala. 1991). *Garner* does not impose a higher standard on a plaintiff. *See, Id.*

In *Garner*, the plaintiffs were pursuing a collective action under the Equal Pay Act.[1] 802 F.Supp. at 422-23. In support of their motion, plaintiffs identified female sales representatives who could point to at least one male hired for the same position who received a higher salary. *Id.* Defendants' response to Humphries' motion falsely asserts that this type of evidence is necessary. (See page 5 of Defendants' Response). The *Garner* Court found this evidence was sufficient; however, the Court never found the evidence was *necessary* to pursue a collective action. *Id.* In fact, the Court held "[t]o impose a strict standard of proof on plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine... provisions of the FLSA." *Id.*

The standard for similarly situated is a reasonable basis standard. *Grayson*, 79 F.3d at 1096; *Haynes,*696 F.2d at 887; *Harper,* 185 F.R.D. at 361. This standard for class notice is not stringent and a motion for class notice typically results in conditional certification of a representative class. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002)(explaining that "because the court has minimal evidence [the notice] determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class."). Defendants cite a few cases as authority that the motion to give notice in this class should be denied. These cases are

---

[1] The Equal Pay Act is part of the Fair Labor Standards Act 29 U.S.C. 206(d). Therefore, it uses the procedures set forth in Section 216(b) for collective actions.

distinguishable from the case at hand and illustrate why class notice would be appropriate.

Defendants first argue that Plaintiff must demonstrate "commonality between the basis of his claims and the potential claims of the proposed class, beyond mere facts of job duties and pay provisions." *Horne v. United States Automobile Ass'n,* 2003 U.S. Dist. LEXIS 15038, (M.D. Ala.).  In *Horne*, the plaintiff sufficiently established *he* was denied overtime pay and that other employees had similar job duties and pay provisions.  He did not establish that *others* were denied overtime pay, and therefore, the court denied notice.  The court held a mere belief that others were denied overtime was insufficient to provide a reasonable basis that plaintiff was similarly situated to the potential class.  Humphries is not relying on a mere belief that others were denied overtime pay.  Humphries has personal knowledge that other trainers with similar job duties and pay provisions were required to work more than forty hours per week and were not compensated for their hours exceeding forty.  (See Initial Decl. of Humphries, Exh. ¶ A).  Additionally, trainers and training managers, both at Humphries' site and at other sites, confirmed that all trainers were denied overtime pay.  (See Initial Decls. of Kessler, Fenstermacher, Cone, Campos, Hatcher and Power, Exhs. B-G).

Second, Defendants contend that Plaintiff *must* show employees are similarly situated with "detailed allegations supported by affidavits." (See Defendant's Response page 5).  The defendant inaccurately cites *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.), *cert denied,* 117 S. Ct. 435.  A plaintiff may also meet this burden by declarations or documents provided to the court. *Brooks v. Bellsouth Telecom.,* 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling v. Hoffman-Laroche, Inc.,* 118 F.R.D. 392,

406-07 (D.N.J. 1988), aff'd 493 U.S. 165, 110 S. Ct. 482 (1989).  Plaintiff has provided

documents and declarations that all trainers are similarly situated.  These allegations

are detailed and supported in numerous declarations.  The declarations specifically

allege that trainers were required to work over forty hours a week and were not

compensated for time worked over forty.  (See Initial Decls., Exhs. A-G).  The

declarations specify that all trainers have identical pay structures; trainers had a base

pay that did not change regardless of hours work.  (See Initial Decls., Exhs. A-G).

Plaintiff also detailed over sixty descriptions of trainers' job duties.  Trainers and training

managers declared that they had personal knowledge that those duties were similar for

all trainers. (See Second Decls., Exhs. A-D).

  Finally, Defendants assert that Plaintiff's allegedly unsupported allegations justify

denying class notice.  The cases cited by Defendants shed light on the meaning of

unsupported and conclusory allegations and demonstrate that Plaintiff's allegations are

neither unsupported nor conclusory.  See, H&R Block v. Housden, 186 F.R.D. 399, 400

(E.D. Tex. 1999); See also, Haynes, 696 F.2d at 887.  In H&R Block, the Court held

that statements of mere belief of a practice were insufficient to support a motion for

notice; some personal knowledge was required. 186 F.R.D. at 400.  In Haynes, the

court held that unsupported allegations by counsel are insufficient to support a motion

for notice.  696 F.2d at 887 (When counsel was asked by the court what evidence he

had to offer to support class notice he responded "there is no legal evidence I want to

offer.").  Humphries does not rely on the allegations of counsel or on mere belief.

Humphries has personal knowledge that other trainers have similar job duties and pay

structures. (See Initial Decl. of Humphries, Exh. A).  He has personal knowledge that

other trainers were required to work overtime without adequate pay. (*See* Initial Decl. of Humphries, Exhs. A). These allegations are not conclusory or unsupported. *See, H&R Block*, 186 F.R.D. at 400; See also, *Haynes*, 696 F.2d at 887. Rather they are detailed allegations supported by Humphries' declarations. Humphries' detailed allegations are further supported by the declarations of other trainers and training managers at multiple sites. (*See* Initial Decls., Exhs. B-G and Second Decls., Exhs. B-D).

**B.    There is No Heightened Burden for Nationwide Class Notice**

In Section III, Part B, of Defendants' Response, Defendants allege there is a heightened burden for nationwide class notice. The cases cited by Defendants do not support this allegation. *See, Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999); See also, *Sheffield v. Orius Corp.*, 211 F.R.D. 411 (D. Ore. 2002). The lenient standard the Defendants acknowledge in Section III, Part A, of Defendants' Response is the same standard in a nationwide class notice; that is: Plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated, and that this burden is not heavy. See, *Harper*, 185 F.R.D. at 362 (finding that "plaintiff's bear the burden to establish that they and the class they wish to represent are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits."); *Grayson*, 79 F.3d at 1096. *White*, 204 F. Supp. 2d at 1313; *H&R Block*, 186 F.R.D. at 400; *Horne*, 2003 U.S. Dist. LEXIS 15038, at *5-6.

Defendants allege that "Defendant's (sic) have presented significant evidence that demonstrates the disparate nature of its various call centers." *See,* Defendants' Response Page 6. Defendants' only evidence regarding the disparate nature of various

Page 8 of  22

call centers is an unsworn declaration of Richard Pitrolo.  (Defendants Decl., Exh. A).

In this declaration three differences are alleged.

First, Plaintiff and Defendants agree there are several sites with a different

supervisor/training manager at each site.  Two of those training managers have sworn

that they have personal knowledge that trainers in each site had similar job duties,

similar pay structure, and were similarly affected when denied overtime pay.  (*See* Initial

Decls. of Hatcher and Power, Exhs, E and G, and Second Declarations of Hatcher and

Power, Exhs. B and C).   Defendants maintained these similarities through standardized

procedures because it contributed to efficient operations from site to site. (*See* Second

Decls. of Humphries, Hatcher, Power and Campos, Exhs. A-D ¶ 4).  Defendants' clients

demanded uniform procedures for trainers. (*See* Exhs. A-D ¶ 4).  Since Defendants'

clients were serviced by numerous call sites, the trainers in those sites had to follow the

same procedures. (*See* Exhs. A-D ¶ 4).   Job duties were further standardized when

Defendants had all of its training managers discuss the appropriate duties for trainers

and create a list of "instructor duties." (*See* Exhs. A-D ¶ 4).   Defendants ensured that

the process was similar at each site by requiring each site to report to a field training

manager who would oversee all the sites. (*See* Exhs. A-D ¶ 4).   The field managers

acted to ensure uniform policies and procedures. (*See* Exhs. A-D ¶ 4).

Second, Defendants assert that Plaintiffs are not similarly situated because sites

were closing at different times and the closing changed the job duties of the affected

trainers.  This is a form cursory allegation rebutted by specific allegations by trainers

and training managers who declared that their jobs were similar in over sixty specific

ways found in Instructor Duties, and in the Job Descriptions located on Defendants'

web site. (*See* Exhs. A-D ¶ 7 & 8).  Plaintiff need only show that his position is similar, not identical to the positions held by the proposed class members.  *Grayson* 79 F.3d at 1096; *Hoffman-Laroche,*118 F.R.D. at 407.

Finally, Defendants allege that sites had separate policies and procedures without indicating to what extent policies and procedures differ.  Plaintiff has provided several declarations that the policies and procedures were substantially similar and any discretion to revise was greatly limited. (*See* Exhs. A-D ¶ 6).  Plaintiff specified, as noted above, several specific ways that similarities were maintained among all trainers.

Both cases cited by Defendants illustrate why class notification is appropriate.  In *Sheffield*, the court denied class notification because the proposed class had "different job titles, enjoyed different payment structures (piece-rate, hourly and salaried), and worked at nine different job sites." 211 F.R.D. at 413.  The existence of different locations was meaningful because the different locations were owned by different small individual companies that were later acquired by the defendant; therefore, each location was run differently.  *Id.*  In the present case, Plaintiff and the proposed class members have the same job titles; they were trainers. (*See* Initial Decls., Exhs. A-G).  Plaintiff and the proposed class members have the same payment structures.  (*See* Initial Decls., Exhs. A-G).  And Defendants' sites were not owned by different small companies but were run by the Defendants who made continuous efforts to standardize each site so that all sites would be substantially similar.  (*See* Second Decls., Exhs. A-D ¶ 4).

The plaintiff in *Harper* had no personal knowledge or evidence that employees in any other location than the plaintiff's location were denied overtime pay. *Harper*, 185 F.R.D. at 363.  Mere belief by the plaintiff that there was a corporate wide plan to deny

overtime was not sufficient. *Id.* Plaintiff in this case does not rely on mere belief. (*See* Initial Declaration of Humphries, Exh. A).

### C. The Motor Carrier Act Exemption is not Relevant to Determining if the Proposed Class is "similarly situated" to Plaintiff.

#### 1. The Motor Carrier Act Exemption

Defendants contend that the Motor Carrier Act exemption applies to members of the potential class and would prevent this Court from issuing notice to potential opt-in plaintiffs. Defendants raise these issues although Defendants admit the applicability of the exemption is not the issue before the Court at this time. *See* Defendants' Response Section II, Fn 1. Defendants also assert that the exemption applies with no real analysis or explanation of how or why the exemption applies even though Defendants bear the burden of proving that the plaintiffs are exempt from coverage. *See, Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Paul v. Petroleum Equipment Tools Co.,* 789 F.2d 282, 286 (4th Cir. 1986); *Dalheim v. DKFW-TV,* 706 F.Supp 493, 495 (N.D. TX 1988) *aff'd* 918 F.2d 1220. "The exemptions, moreover, are narrowly construed against the employer seeking to assert them and their application is limited to those plainly and unmistakably within their terms." *Dalheim,* 706 F.Supp at 501 (citing *Arnold v. Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)). Plaintiff disagrees with Defendants' assertions and responds briefly, while maintaining that the Court need not consider this issue at this stage.

Section 213(b)(1) of the FLSA provides, in relevant part, that the overtime provisions of the Act shall not apply with respect to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and

particular facts. *Kirchenbaum Co. V. Wallins*, 316 U.S. 517, 523 (1942).   The Field

letter has no evidence of thoroughness.   There is no basis for its reasons.   Earlier

pronouncements by the Secretary of Labor have been inconsistent with the view of Mr.

Knipe, a district director.   *See, Paul Friedrich v. U.S. Computer Services*, 974 F.2d 409,

416 (3rd Cir.)(citing an *amicus curiae* brief by the Secretary of Labor that argues that

the Motor Carrier Act does not exempt employees from the protection of the FLSA in a

situation where field engineers had to drive their own cars on work assignments with

work equipment and frequently crossed a state line when driving).   Based on the above

factors Mr. Knipe's letter should carry no weight with this Court.

### 2.   The Application of an Exemption is Not Relevant to Determining if Class Notice is Appropriate.

"Whether the positions the Plaintiff held were exempt is *not* an issue when

deciding whether to authorize notice in an FLSA action.   Once the Plaintiff makes a

colorable claim for relief, the *only* inquiry necessary is whether the potential plaintiffs to

be notified are similarly situated to the named plaintiff."   *Gjurovich v. Emmanuel's*

*Marketplace, Inc.*, 2003 U.S. Dist. LEXIS 16770, *9 (S.D.N.Y. 2003)(emphasis added);

*see also, Morisky v. Public Health Service Electric & Gas Co.,* 111 F. Supp. 2d 493, 497

(D. N.J. 2000).   The notice stage of an action, in the absence of a reasonable

opportunity for plaintiff to conduct discovery, is not the time to consider the applicability

of an exemption.   *Boothe v. Milton Roebuck*, 239 F. Supp. 2d 234, 239 (N.D.N.Y.

2002).

Defendants' assertion that "determination of exempt status precludes class

certification" directly contradicts the above cited cases.   *See* Defendants' Response

Page 13 of  22

Page 7.  Moreover, no cases cited by Defendants support their assertion that the determination of exempt status precludes class certification at the notice stage before the plaintiff has a reasonable opportunity to conduct discovery. *See, Morisky,* 111 F. Supp. 2d at 497; *Bayles v. American Medical Response of Colorado, Inc.,* 950 F. Supp.2d 1053, 1067-68 (D. Colo. 1996); *Freeman v. Nat'l Broadcasting Co.,* 256 F. Supp. 2d 941 (S.D.N.Y 1993).  This is because Defendants focused on the standard for similarly situated after discovery instead of at the relevant time, at the notice stage. Defendants failure to make this critical distinction resulted in misleading and inaccurate statements by Defendants.

The standard for establishing if a class is "similarly situated" changes depending on the amount of evidence available to the parties, which usually corresponds to different stages of a trial. *Morisky,* 111 F. Supp. 2d at 497; *Thiessen v. General Electric Capital Corp.,* 996 F. Supp. 1071, 1080 (D. Kan. 1998).  "Courts that have addressed the issue of defining 'similarly situated' have generally explicitly adopted or implicitly recognized a two-step approach." *Morisky,* 111 F. Supp. 2d at 497; *Thiessen,* 996 F. Supp. at 1080; *Freeman,* 256 F. Supp. 2d at 944-45 (S.D.N.Y 1993). Under this approach, the first determination occurs when the court decides whether notice of the action should be given to potential class members. *Morisky,* 111 F. Supp. 2d at 497; *Thiessen,* 996 F. Supp. 1071, 1080 (D. Kan. 1998). Id.  The first step is at the notice stage because the court usually has only minimal evidence before it, such as the pleadings and any affidavits submitted by the parties.  *Id.*  "This determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (quoting *Brooks v. Bellsouth Telecommunications,* Inc., 164

F.R.D. 561, 568 (N. D. Ala. 1995).  At the second stage, the court "makes a second

determination after discovery is largely complete and the case is ready for trial."

*Thiessen,* 996 F. Supp. at 1080; *Morisky,* 111 F. Supp. 2d at 497.   The court employs

a stricter standard for the "similarly situated" question because the court has much

more information on which to base its decision. *Id.*

In *Bayles*, a class was conditionally certified prior to discovery.  The class was

then decertified when individual issues presented themselves in discovery and trial

preparation.  950 F. Supp.2d at 1067-68.  *Bayles* is not authority for the statement that

collective treatment was inappropriate at the notice state; rather, collective treatment

was allowed through discovery.  *Id.*

In *Morisky*, the Court used a *strict* standard to determine if potential plaintiffs

were similarly situated even though the court was evaluating a motion for notice to

potential plaintiffs. 111 F. Supp. 2d at 497. Although the appropriate standard for the

notice stage is usually the lenient standard, the Court used a higher standard because

discovery was completed well before the motion for notice.  *Id.*  If plaintiffs had not had

a reasonable opportunity to conduct discovery then the lenient standard would have

been appropriate for the notice stage.  *Id.*  Humphries' motion for notice should be

evaluated by the lenient standard discussed in part A of this section because Plaintiff

has not had a reasonable opportunity to conduct discovery and as a result there is

minimal evidence before the court: Plaintiff has provided pleadings, declarations, and

two pieces of documentary evidence.

Defendants also point out that the applicability of an exemption can be a fact

intensive inquiry. *See, Dalheim v. KDFW-TV,* 918 F.2d 1220,1226; *Roberts v. National Autotech, Inc, 192 F.2d 672, 678 (N.D. Tex. 2002);* Bohn v. Park City Group, Inc., 94 F.3d 1947, 1461 (10th Cir 1996); *Freeman v. Nat'l Broadcasting Co.,* 256 F. Supp. 2d 941, 945 (S.D.N.Y 1993). Not one of those cases was decided at the notice stage of litigation. No case cited by Defendants or found by Plaintiff holds that because an exemption may affect parties differently that they are not similarly situated at the notice stage. Nor has any case cited by the Defendants or found by the Plaintiff supported the notion that the possibility of a Motor Carrier Act exemption for some and not all of the potential class should deter granting a motion for class notice. What is clear is that the possibility of an applicable exemption is not an issue when deciding whether to authorize notice in an FLSA action. *Gjurovich,* 2003 U.S. Dist. LEXIS 16770, *9; *Boothe,* 239 F. Supp. 2d at 239.

Next, Defendants argue that certifying a class only to determine later that the matter should not proceed as a collective action because the class members are not similarly situated is a waste of litigants' time and resources. *See* Defendants' Response Page 8 (citing to *Freeman,* 256 F. Supp. 2d at 945.). In *Freeman,* the class was not certified because "there [were] material differences in the duties and responsibilities of employees." The employer had alleged that exemptions applied but the court did *not* rely on the applicability of a potential exemption to determine if class notice was appropriate. 256 F. Supp. 2d at 945. There are not sufficient facts before this Court to know that certifying a class will only lead to decertification and waste litigants' time and resources.

Finally, Defendants point out that "there is no justification for conditionally certifying a class and sending notice, when it is obvious to the Court at the notice stage that the class member are not similarly situated." Defendants Response Page 7. Yet, Defendants have provided no meaningful facts making it obvious that trainers are not similarly situated. At this stage, the known facts overwhelmingly indicate that trainers are similarly situated. It is possible that all trainers traveled to the same locations and with same belongings - the opportunity for discovery will make these facts known. But these issues are not relevant to the question at hand. What is relevant to meeting the lenient standard for the "similarly situated" question is that all trainers failed to receive overtime pay owed to them and that the Plaintiff and the proposed class have similar job duties and pay structure. See Plaintiff's Reply Section III part A.

Defendants applied the wrong standard to the question before the court. Defendants applied a higher standard than the one at issue. Moreover, questions regarding exemptions are specifically not at issue at this stage. Finally, Plaintiff has established that he meets this lenient standard.

**D.     Plaintiff's Proposed Notice**

**1.     There is a need for Court Supervised Notice and Expedited Discovery.**

Defendants make three unfounded and false assertions regarding the need for court supervised notice. First, Defendants assert that Plaintiff already has access to a list of all former trainers of the Defendants. Second, Defendants assert that Plaintiff has access to a database of names and addresses and has been using this database. Third, Plaintiff asserts that Plaintiff has sent notice to both current and former

employees.  Plaintiff does not have a list or a database of such matters[2]; nor has

Plaintiff sent notice to all former and current employees in various states.  With rare

exception, Plaintiff has not contacted anyone outside of Texas.

Since Plaintiff does not have the above information, court supervised notice is

needed to facilitate the Notice process and to preserve the rights of those who have not

yet opted in.  Moreover, Defendants' suggestion that the time period for mailing in

consent forms should run from the date of the letter sent by Plaintiff does not make

sense because letters were not sent to most of the former or current employees.  Only

a few trainers have been contacted. Therefore, Plaintiff Humphries maintains his earlier

requests that:

(a)    The Court consider this motion upon ten (10) days after submission;

(b)    The Court order Defendants to provide Plaintiff Humphries the discovery
       requested in his motion;

(c)    That the Court authorize the notice attached to Plaintiff's Motion and
       authorize that such notice may be issued immediately after Defendants
       respond to the discovery requests; and

(d)    That the Court impose a deadline of ninety (90) days from the date of
       issuance of the notices within which time new Plaintiffs can "opt-in" to this
       collective action by filing their respective consents.

---

[2] Plaintiff has, though his counsel's investigations, gathered names and addresses of a number of individuals who are believed to work or have worked for the Defendants. However, Plaintiff does not have a "misappropriated electronic database," or any other database of Defendants other than what has already been provided to Defendants. Moreover, the letter to which Defendants refer was sent in connection with a separate investigation into Defendants' wage practices. As can be seen from the content of the letter, it is wholly unrelated to the allegations made in the instant suit, and directed to a different class of Defendants' employees; i.e., those who have been classified as "non-exempt" by Defendants.

**2.     Plaintiff's Proposed Notice is Fair and Reasonable.**

Plaintiff's proposed notice is fair and reasonable as it is based on the Notice and Consent forms issued by the United States District Court for the Northern District of Texas in *Barnett v. Countrywide Credit Indus., Inc.*, No. 3-01CV1182-M, though it has been modified for use in this case.   Nonetheless, Defendants have attached an alternative proposed class notice that Defendants allege is simpler and more understandable than the notice proposed by the Plaintiff.  Even if this is true, which Plaintiff does not believe is the case, Plaintiff should be allowed to use the language of his choice. *King v. ITT Continental Baking Co.*, 1986 U.S. Dist. LEXIS 29321, *7 (N.D. Ill. 1986) (stating that "Absent reasonable objections... plaintiffs should be allowed to use the language of their choice and drafting in the notice.").  An alteration should not be made to Plaintiff's proposed notice unless such an alteration is necessary. *Id.*

Defendants also lodge several objections.  First, Defendants claim earlier communications to the proposed class are misleading when Plaintiff stated there were established violations of the law against the Defendants.  Plaintiff never made such statements.  Plaintiff always qualified statements to say that violations *may* have occurred or that actions taken against the Defendants were based on an *alleged* failure to pay overtime.  Defendants also assert Plaintiff's proposed notice is misleading because it implies that Defendants have been found liable for unpaid overtime.  There is no basis for such an implication. To the contrary, Plaintiff states on page one that "the lawsuit *alleges* that Stream and Solectron failed to pay overtime compensation as required by the FLSA." (Emphasis added).  Allegations are qualified in a similar manner

throughout the entire proposed notice. Plaintiff specifically states: "This Notice is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose." Defendants' objections have no merit because they are objecting to several statements that do not exist.

Defendants' second objection is to the following statement in Plaintiff's proposed notice: "Further information about this Notice, or the lawsuit may be obtained from Plaintiff's counsel at the address or telephone numbers listed on page one of this Notice." Defendants feel it is not appropriate to direct the putative class to contact specific attorneys. Defendants incorrectly cite *Wertheim v. State of Arizona* as authority for this belief. *1993 U.S. Dist. Lexis 21292, *17.* Courts have allowed statements such as the following: "If you have any questions with respect to the case, you may contact [plaintiff's counsel]. *King*, 1986 U.S. Dist. LEXIS 29321 at *7; *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 449-50 (N.D. Ill. 1982); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 2003 U.S. Dist. LEXIS 16770, *17-18 (S.D. NY, 2003). In *Gjurovich*, the court, *sua sponte,* added the following to plaintiff's notice: "further information about this Notice, the deadline for filing a Consent to Become Party Plaintiff, or questions concerning this lawsuit may be obtained by writing or phoning Plaintiff's counsel."

In *Wertheim*, the court ruled on objections to the proposed notice and listed changes. These changes are without any context. The court states that information on page four about contacting Plaintiff's law firm should be deleted. *Id.* It does not state that such information could not be placed anywhere in the document or that such information is inappropriate, which is the proposition for which Defendants cited the

case. Moreover, the specific portion of the proposed notice that is questioned by Defendants has been approved by the United States District Court for the Northern District of Texas. *See, Barnett v. Countrywide Credit Indus., Inc.*, No. 3-01CV1182-M.

Plaintiff does not object to including name and contact information of Defendants' counsel. Plaintiff does not object to having consent forms mailed directly to the court if the court is willing assume the logistics of such a request. If not, consent forms should be addressed to Plaintiff's counsel. *Herrera v. United Management Corp.*, 2000 U.S. Dist. LEXIS 12406, *5-6 (N.D. Ill. 2000) (finding that defendant's request to send consent forms to the court would overburden the court and that they should instead be sent to Plaintiff's counsel.); *See also, King*, 1986 U.S. Dist. LEXIS 29321, at *7.

## IV. CONCLUSION

In order to facilitate the purposes of the FLSA's collective action provisions, this Court should authorize a Court-approved notice to be issued by Plaintiff to potential plaintiffs. Such a Notice will allow those employees whose rights are eroding each day to be informed of this action and their right to join. Plaintiff has met his burden to show that other  similarly situated individuals exist and are interested in asserting their claims.

Respectfully submitted,

THE LAW OFFICES OF

JEFFREY H. RASANSKY, P.C.

By: _____

**Jeffrey H. Rasansky**

State Bar No. 16551150

**Jeremi K. Young**

State Bar No. 24013793

Turtle Creek Centre, Suite 1640

3811 Turtle Creek Boulevard

Dallas, Texas 75219

214/651-6100

214/651-6150 Fax

ATTORNEY IN CHARGE FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above has been served on counsel of record via certified mail, return receipt requested, on this 14th day of November, 2003 on the following:

*Via CMRRR #7000 1670 0011 0879 0069*

Ronald M. Gaswirth

Gardere Wynne Sewell LLP

3000 Thanksgiving Tower

1601 Elm Street

Dallas, TX 75201-4761

Jeremi K. Young

Page 22 of 22